25-mj-6126-MPK

# AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Special Agent Samuel Elliot Paulay, being sworn, state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.  I am a Special Agent with the Federal Bureau of Investigation ("FBI"). I have been employed as a Special Agent with the FBI since March of 2024, and am currently assigned to the Boston Field Office, Metro Boston Gang Task Force ("MBGTF"). I am a "federal law enforcement officer" as defined in Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure, that is, a government agent who is engaged in enforcing the criminal laws of the United States and within a category of officers authorized by the Attorney General to request a search warrant.

2.  Since 2024, I have received training and experience in interviewing and interrogation techniques, arrest procedures, search and seizure, drug related crimes, white collar crimes, search warrant applications, and various other crimes. Since October of 2024, I have been assigned to work on federal gang investigations on a violent crime and gang task force. In the course of my training and experience, I have become familiar with the methods and techniques associated with the distribution of drugs, the laundering of drug proceeds, and the organization of drug conspiracies run by members and associates of street gangs and other criminal enterprises. In the course of conducting these investigations, I have been involved in the use of the following investigative techniques: interviewing informants and cooperating witnesses; conducting physical surveillance; conducting short-term and long-term drug investigations; consensual monitoring and recording of both telephonic and non-telephonic communications; analyzing telephone pen register and caller identification system data; conducting court-authorized electronic surveillance; conducting court-authorized Title III

wiretap investigations; and preparing and executing search warrants that have led to substantial seizures of drugs, firearms, and other contraband.

3. Based on my training and experience as a Special Agent, I am familiar with federal narcotics laws. I know that it is a violation of Title 21 U.S.C. § 841(a)(1), for any person to knowingly or intentionally manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance. I know that it is a violation of 21 U.S.C. § 846, for any person to conspire to violate the drug laws.

## PURPOSE OF AFFIDAVIT

4. I submit this affidavit in support of a Criminal Complaint charging Gus BRAGGS ("BRAGGS"), born 1997, with violating Title 21, United States Code, Section 841(a)(1) (possess with intent to distribute cocaine).

5. I am familiar with the facts and circumstances of this investigation from my own personal participation and from oral and written reports made to me by agents of the FBI and other federal, state and local law enforcement agencies.

6. I submit this affidavit for the limited purpose of establishing probable cause to believe BRAGGS has committed the above offense. Accordingly, I have not included each and every fact known to me and other law enforcement officers involved in this investigation. I have set forth only the facts that I believe are needed to establish the requisite probable cause.

## PURPOSE OF AFFIDAVIT

**I.   Background**

7. As stated above, I am currently investigating violations of federal law, including Title 21 U.S.C. §§ 841(a), involving BRAGGS. I am aware, based in part on records checks of the Massachusetts Board of Probation ("BOP") and Interstate Identification Index ("III"), that

2

BRAGGS has numerous prior entries on his criminal history, including arrests and convictions for assault and battery on a 60+/disabled person with injury, malicious destruction of property, assault and battery, larceny from a person, strangulation or suffocation, threatening to commit a crime, witness intimidation, assault with a dangerous weapon, assault and battery on a police officer and receiving stolen property.   Amongst BRAGGS' criminal history are several convictions referenced above for which the possible sentence would (and did) exceed one year. Namely, in or about 2023, BRAGGS was convicted and received a sentence of two and a half years in the house of correction, with 18 months to serve and the balance suspended on probation until 2026 for assault and battery on a 60+/disabled person and assault and battery on a 60+/disabled person with injury.

8. I am also aware that BRAGGS is associated with the Boston based street gang known as H-Block. H-Block's gang territory is located in the Roxbury neighborhood of Boston, MA. BRAGGS and other H-Block gang associates have been under investigation for drug distribution and violence that they have committed, including in furtherance of the gang.   As part on an ongoing DEA investigation, in August, 2024, ten members and associates of H-Block were indicted and charged for a number of federal drug trafficking violations. *See United States v. Trea Lankford, et. al.*, 24-cr-10252-LTS; *United States v. Avery Lewis, et. al.,* 24-cr-10251-MJJ; *United States v. Timothy Hearns, et. al.,* 24-cr-10253- IT; and *United States v. Jerry Gray*, 24-cr-10254-AK.

II. **BRAGGS' Arrest for Trafficking Cocaine on November 1, 2024**

9. On November 1, 2024, at approximately 2:00am, troopers with the Massachusetts State Police ("MSP") were patrolling on the area of Massachusetts Avenue in Boston, MA and observed a vehicle Massachusetts registration 5SGW87 with window tinting that was in violation

3

of Massachusetts General Law 90/9D, pertaining to windshields and windows obscured by nontransparent materials. The tint prevented the troopers from observing the occupants within the vehicle and the troopers could barely make out a silhouette of the operator of the vehicle. The vehicle was idling stationary on Allerton Street, and it appeared the occupant was speaking to a female on the sidewalk. The female subsequently walked over into the vehicle, opened the rear right passenger door and entered the vehicle.

10. The troopers were aware, based on their training and experience, that the area of Massachusetts Ave and Allerton Street is an area that is frequented with drug activity, prostitution and other illegal activity. Individuals within that area consume and distribute narcotics as well as solicit themselves for prostitution on a daily basis.

11. After the female entered the vehicle bearing Massachusetts registration 5SGW87, the vehicle took a right turn onto Magazine Street. Troopers initiated a motor vehicle stop of the vehicle at the intersection of Magazine Street and Norfolk Ave. Upon approaching the vehicle, one of the troopers began speaking with the female[1] party in the rear seat. The trooper noted that it appeared the female party was homeless. Upon speaking with the female party, it appeared to the trooper that she had consumed illegal narcotics as well because she was fidgeting, unable to control her body movements, and sporadic with her behavior while speaking with the trooper.

12. Another trooper then began to speak with the operator of the vehicle, later identified as BRAGGS. During this incident, the trooper observed a marijuana baggie in the driver door pocket. The trooper then questioned BRAGGS if he had any further marijuana in the vehicle and BRAGGS advised that he had some [marijuana] in a black cross-body bag.

---

[1] I am aware of this female's identity, her name, as well as other biographical and related information. I am not including these specifics for the purpose of this affidavit in support of a criminal complaint.

BRAGGS then opened the bag for the trooper. The trooper observed a large quantity of cash in the bag along with the marijuana. The trooper was aware, based on his training and experience, that individuals who conduct sales of illegal narcotics typically conceal narcotics within other containers. The trooper then questioned BRAGGS on how he knew the rear passenger and if he knew her name, to which BRAGGS stated, "no." BRAGGS then stated he was just "giving her a ride" and stated, "she was giving me $20 dollars to drive her to Mattapan."

13. The trooper subsequently returned to the cruiser, ran both BRAGGS and the female party through the RMV database and observed that the female party had a current address in Roxbury, which is approximately 3 miles from Mattapan. At this time, the trooper returned to the vehicle and had BRAGGS step out to speak with him, and believed at that time that there was an illegal narcotics sale being completed between the female party and BRAGGS.

14. The trooper asked BRAGGS if there was any illegal narcotics in the vehicle, to which BRAGGS stated no. Trooper Tierney then requested BRAGGS' cross-body bag due to the trooper's previous observations of the marijuana packaging and the large quantity of money. The trooper opened a blue marijuana bag labeled "Fanta Rice Crispy Treats" and upon doing so he observed a clear baggie with a white rock-like substance believed to be crack cocaine. At this time, BRAGGS grabbed the bag and ran from the trooper down Magazine Street towards Norfolk Ave. The trooper gave chase to BRAGGS down Norfolk Ave and advised that he was in a foot pursuit. The trooper provided the description of BRAGGS and his flight path. The trooper then pursued BRAGGS down Gerard Street, where he observed BRAGGS throw the bag in an attempt to get rid of the narcotics. BRAGGS than began to slow down as he was running in his socks. The trooper gave multiple verbal commands to BRAGGS to stop and get on the ground, and BRAGGS slowly came to a stop on Howard Street. The trooper advised BRAGGS numerous

5

times to get on the ground, to which BRAGGS eventually complied, and he was placed into handcuffs without incident. BRAGGS was then escorted to an MSP cruiser and transported back to the initial incident location.

15. A subsequent search of the vehicle was then conducted by the troopers, who located a light blue scale on the driver side door of the vehicle. No further evidence was recovered from the vehicle. A tow truck then arrived on scene and towed the vehicle.

16. BRAGGS was transported back to the State Police - South Boston barracks. The plastic baggie containing the white rock like substance was seized and the currency that BRAGGS had in his bag was also seized and came out to $2,010. The plastic baggie containing the white rock-like substance, the US currency and the light blue scale were placed in evidence.

17. During the search of BRAGGS' person in this investigation, troopers located several items of significance and also seized them as evidence, including 2 Apple iPhones.

18. The white rock like substance was subsequently sent to the MSP Crime Laboratory, which found that the substance was found to contain cocaine and the weight of the tested powder was approximately 34.41 grams.

19. Based on my training and experience, the training and experience of the troopers involved, and an investigation into BRAGGS and this arrest, I believe that the recovered narcotics were consistent with being possessed with intent to distribute. Given the totality of the evidence including the conduct and the seized items, the amount of the suspected crack cocaine; the multiple cell phones; the large amount of cash; and the scale; this conduct is all indicative of street-level drug distribution.

20.     Based on my training & experience, the presence of multiple cell phones is also indicative of street level drug distribution and significant because drug dealers often use several phones to try and hide their criminal activity from law enforcement.

## CONCLUSION

21.     Based on the foregoing, there is probable cause to believe that on or about November 1, 2024, in Boston, in the District of Massachusetts, that BRAGGS did possess cocaine with intent to distribute, in violation of Title 21, United States Code, Section 841(a)(1).

I declare the foregoing is true and correct.

/s/ Samuel Elliot Paulay
_____
Samuel Elliot Paulay
Special Agent, FBI

Signed electronically and sworn to via telephone in accordance with Federal Rule of Criminal Procedure 4.1 on this __ day of March, 2025.

March 15, 2025

HON. M. PAGE KELLEY
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS

7